IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED HERITAGE PROPERTY AND CASUALTY COMPANY, an Idaho corporation<br><br>Plaintiff,<br><br>v.<br><br>FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, a foreign corporation<br><br>Defendant. | Case No. 1:CV 10-456-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to compel filed by plaintiff United Heritage, and a motion to quash subpoena to produce documents filed by defendant Farmers Alliance Mutual Insurance Company (FAMI). The motions are fully briefed and at issue. For the reasons expressed below, the Court will reserve ruling on the motions until it has had an opportunity to conduct an *in camera* review of the documents.

## ISSUE

The two motions present a single issue: Are certain documents contained in FAMI's claims file discoverable by United Heritage? More specifically, the issue is whether correspondence between FAMI's counsel and its claims adjusters is protected by

**Memorandum Decision & Order - 1**

the attorney client privilege, and whether the notes of FAMI claims adjustor Alice Lloyd are protected by that privilege and the work product doctrine.

## FACTUAL BACKGROUND

On April 3, 2003, minor Kiana Zarate fell into a stairwell and suffered injuries at an apartment leased to her parents by the owners, the Beddes family and their partnership. The Beddeses were insured by FAMI. At the time of the accident, the apartment was managed by Rentmaster under a Property Management Agreement with the Beddeses.

In November 2003, the Zarates made a claim with FAMI for damages against the Beddeses, and FAMI retained counsel for the Beddeses. About two years later, the Beddeses and FAMI settled the Zarates' claim for $300,000.00 under the FAMI policy. The Release and Settlement Agreement drafted by FAMI released FAMI and the Beddeses but expressly reserved all claims the Zarates may have had against Rentmaster:

> This release is not intended to release any other tortfeasor...and is specifically intended to exclude and does hereby exclude Rentmaster of Rexburg, any of its owners, or assigns as possible tortfeasor in this matter of Releasors. Such claims are specifically reserved and are not compromised or released by his document.

*See Complaint* at ¶ 13.

The Zarates then made a claim against Rentmaster under a policy of insurance issued by United Heritage. On April 4, 2006, the Zarates filed a lawsuit against Rentmaster for negligence. Rentmaster filed a third-party complaint against the Beddeses, and FAMI provided the Beddeses with a defense.

Rentmaster tendered the defense and indemnity of this lawsuit to United Heritage,

**Memorandum Decision & Order - 2**

and United Heritage accepted. United Heritage alleges that it made numerous requests of FAMI for a copy of its policy to the Beddeses – including one request made by subpoena – but never received an answer. It was not until 2010, United Heritage alleges, that it received a copy of the FAMI policy when a mediator ordered that it be produced, and discovered a provision stating that an insured includes "any organization while acting as your real estate manager."

This provision, United Heritage asserts, means that FAMI was the primary insurer not only for the Beddeses but also for Rentmaster. Accordingly, United Heritage and Rentmaster tendered the defense of the Zarate's lawsuit to FAMI and demanded a refund of attorney fees and costs incurred to date and payment of any indemnity dollars required to be paid by United Heritage in order to protect Rentmaster. Eventually, the Zarates agreed to settle with Rentmaster, and United Heritage paid the $500,000 policy limit under its policy insuring Rentmaster.

Some months prior to that settlement, when FAMI resisted the tender, Rentmaster assigned its claims to United Heritage. United Heritage then filed this lawsuit, alleging, among other claims, that FAMI engaged in bad faith in failing to represent Rentmaster, its insured, and committed fraud by concealing its obligations to Rentmaster.

**Litigation in the Present Case**

As part of its initial disclosures in this lawsuit, FAMI provided a privilege log that identified documents that it claimed were protected by the attorney client privilege and the work product doctrine. United Heritage moved to compel production of those

**Memorandum Decision & Order - 3**

documents, claiming that they are not entitled to protection, and has also served a subpoena duces tecum for witnesses to produce the documents at depositions scheduled for February 15, 2011. FAMI responded by filing a motion to quash the subpoena, arguing that the documents are all protected.

According to the privilege log, the documents fall into two broad categories. The first contains about 13 pages of case notes of FAMI claims adjuster Alice Lloyd, more specifically described as "notes regarding the status of the Zarate Case and communication with John Bailey [FAMI's attorney from the law firm of Racine Olson]." These notes were provided to United Heritage, but material deemed protected by FAMI was redacted. Regarding this first category of documents, FAMI claims protection under both the attorney client privilege and the work product doctrine.

The second category contains mostly correspondence between attorney Bailey and adjustor Lloyd (and another FAMI adjustor, Kathy Brick) totaling about 146 pages. FAMI claims protection of this second category of documents under the attorney client privilege.

## ANALYSIS

### Attorney Client Privilege

Because this case is based on diversity jurisdiction, the attorney client privilege is governed by Idaho law. *See Fed.R.Evid. 501*. The applicable Idaho rule is Idaho Rule of Evidence 502 that provides a privilege for, among other things, "confidential communications made for the purpose of facilitating the rendition of professional legal

**Memorandum Decision & Order - 4**

services to the client which were made . . . between the client or the client's representative and the client's lawyer . . . ."

FAMI's privilege log at least makes a prima facie showing that the listed documents fall within Idaho Rule of Evidence 502. They primarily consist of correspondence between FAMI's counsel to FAMI's insurance adjustors Alice Lloyd and Kathy Brick concerning the Zarate litigation. On their face, these communications appear protected by Idaho Rule of Evidence 502(b).

However, Rule 502(d) states that "there is no privilege under this Rule" if any of six specified exceptions apply. Here, two exceptions are at least potentially applicable: The "Joint Clients" exception and the "Fraud" exception. The "Joint Clients" exception is contained in Rule 502(d)(5):

> **Joint Clients**. As to a communication relevant to a matter of common interest between or among two or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between or among any of the clients.

No published Idaho decision applies this exception. There are, however, valuable insights contained in a leading treatise discussing a proposed Federal Rule of Evidence – never adopted – that is nearly identical to Idaho's Rule of Evidence 502(d)(5).[1] *See* 24 Wright and Graham, *Federal Practice and Procedure*, § 5505 (1986). This treatise

---

[1] The only difference between the unapproved federal rule and Idaho's Rule 502(d)(5) is that the Idaho Rule adds the words "or among" after the word "between" in identifying that the exception applies to communications "between *or among* two or more clients." The difference is insignificant to the issues here.

**Memorandum Decision & Order - 5**

concludes that the Joint Clients exception was specifically designed to apply to first party bad faith actions between an insured and an insurer. *Id*. at p. 551. In those cases, the insured and the insurer are joint clients: "Typically in the insured-insurer relationship, the attorney is engaged and paid by the carrier to defend the insured and therefore operates on behalf of the two clients." [Lexington Insurance Company v. Swanson, 240 F.R.D. 662, 667 (W.D. Wash. 2007)](quoting [Barry v. USAA, 989 P.2d 1172 (Wash.App.Ct. 1999)]). In those situations, where the insured brings a bad faith action, the courts have rejected claims that communications between the insurer and the attorney it hired to represent the insured are privileged. *Id*; *see also* Wright and Graham, *supra* at § 5474 at pp. 122-23 (concluding that "[a]n increasing number of cases have adopted this rationale" and that it is the favored view).

In the present case, United Heritage stands in the shoes of Rentmaster, by virtue of Rentmaster's assignment. Although United Heritage argues that Rentmaster should have been treated as an insured by FAMI and should have been represented by Bailey, in fact Rentmaster never was a client of Bailey. Thus, Bailey did not have joint clients here as in the traditional bad faith case discussed above. The Rule 502(d)(5) exception only applies to communications by one of the joint clients to counsel "when offered in an action between or among any of the clients." Because Rentmaster was never a client, the communications at issue were not made by a "joint client," and this action is not "between or among any of the clients." Accordingly, the Court finds that the exception in [Idaho Rule of Evidence 502(d)(5)] does not apply to this case.

**Memorandum Decision & Order - 6**

The Court turns next to the "Fraud" exception contained in Idaho Rule of Evidence 502(d)(1):

> **Furtherance of Crime or Fraud.** If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud.

Here, United Heritage – standing in the shoes of the insured, Rentmaster – alleges that FAMI used the services of its attorney to conceal its obligations to Rentmaster and thereby commit fraud. Is this allegation sufficient to invoke the fraud exception of Idaho Rule 502(d)(1)? Again, Idaho has no cases interpreting this section, and the Court therefore turns once more to the Wright & Graham treatise.

In discussing the identical fraud exception contained in the rejected Federal Rule 503, the treatise notes that whether or not the communications were in aid of fraud is a preliminary question of fact pursuant to Federal Rule of Evidence 104(a). *Id*. at § 5501 at p. 520. The burden of proving preliminary facts under Rule 104(a) is on the opponent of the privilege claim, United Heritage. *Id*.

The burden that United Heritage must satisfy – to obtain outright disclosure of the documents – is to show by a preponderance of the evidence that FAMI retained and/or enabled Bailey to commit a fraud. *In re Napster*, 479 F.3d 1078 (9th Cir 2007) *abrogated on other grounds*, 130 S.Ct. 599(2009). While this burden may be difficult to satisfy by independent evidence, the Circuit explained that a challenging standard was "consonant with the importance of the attorney-client privilege . . . [which] is central to the legal system and the adversary process and thus deserving of unique protection in the courts."

**Memorandum Decision & Order - 7**

*Id.* at 1095 (internal quotations omitted).

In this case, United Heritage claims that it has satisfied its burden by showing that (1) FAMI did not respond to numerous requests for the FAMI policy, including one request by subpoena, which would have revealed the clause in the policy showing that Rentmaster was an insured; and (2) that FAMI used its attorney to draft a release that expressly excluded Rentmaster. Perhaps recognizing that these two items are not sufficient by themselves to satisfy the preponderance-of-the-evidence standard, United Heritage stressed in its briefing that it is at least entitled to an *in camera* review of the documents. *See Supplemental Brief (Dkt. 32).*

A lesser standard applies to an *in camera* review. *U.S. v. Zolin*, 491 U.S. 554 (1989). It only requires "a showing of a factual basis adequate to support a good faith belief by a reasonable person . . . that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Id.* at 572.

FAMI agrees with United Heritage's request for an *in camera* review. The Court will therefore order that the parties provide the allegedly privileged documents to the Court for its *in camera* review.

**Work Product**

The work product doctrine, codified in Rule 26(b)(3), protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *In re Grand Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2004). To obtain such documents, United Heritage has the burden of showing (1) they are otherwise

**Memorandum Decision & Order - 8**

discoverable, and (2) a "substantial need for the materials to prepare its case" and "undue hardship [in] obtain[ing] their substantial equivalent by other means." *See* Rule 26(b)(3).

The only documents FAMI is attempting to protect by invoking the work product doctrine are the notes of its claim adjustor Alice Lloyd. It appears from the log that Lloyd's notes – described as "notes regarding the status of the Zarate case and communications with [FAMI's counsel]" – are tangible things prepared by a party in anticipation of litigation. Thus, the notes are protected by the work product doctrine unless United Heritage can establish the two elements required by Rule 26(b)(3) and listed above.

The first element of the test is satisfied as these notes are "otherwise discoverable." It is at least reasonable to believe that the documents listed in the privilege log might contain evidence explaining (1) whether FAMI understood that Rentmaster might be an insured under their policy, (2) why FAMI decided to expressly exclude Rentmaster from the Release Agreement, (3) why FAMI resisted all attempts to produce their policy, and (4) whether FAMI had any strategy to conceal its obligations to Rentmaster. Thus, the documents appear to be relevant to the bad faith claim and may lead to the discovery of admissible evidence.

With regard to the second element – need and hardship – United Heritage argues that Alice Lloyd is unavailable due to health concerns and hence her notes are the only evidence available regarding her involvement in the alleged fraud. FAMI responds that she remains available because even with her health concerns, she could answer written

**Memorandum Decision & Order - 9**

interrogatories or some form of discovery other than a deposition.

The record contains a letter from Lloyd's treating physician, Dr. Barry Molk. *See Affidavit of Thomson (Dkt. 22)* at Exh. K. He explains that Lloyd has suffered two strokes, and that even "[m]inor levels of stress have at times provoked intense emotional discord . . . ." He concludes that she could suffer another stroke or heart attack if she is subjected to "depositions, court proceedings, and similar stressful interpersonal communications."

From Dr. Molk's letter, the Court concludes that Lloyd is not only unavailable for depositions, but also unavailable for other forms of discovery. Her health appears so fragile that even answering written interrogatories could be very risky. Given that, her notes are the only evidence from her that might show her involvement in any alleged fraud. For that reason, the Court finds that United Heritage has proven the need and hardship prong of the test. Under Rule 26(b)(3), the notes of Alice Lloyd are not protected as Work Product.

Because FAMI also asserts that her notes are protected as privileged, the Court will not order them produced until after the Court has had an opportunity to conduct an *in camera* review of the material.

## Conclusion

With regard to the claims of attorney-client privilege, the Court finds that the Joint Clients exception of Idaho Rule of Evidence 502(d)(5) does not apply. With regard to the Fraud exception contained in Idaho Rule of Evidence 502(d)(1), the Court will conduct an

**Memorandum Decision & Order - 10**

*in camera* review of the documents and determine whether they satisfy the preponderance-of-the-evidence showing required by *In re Napster*. With regard to the Alice Lloyd notes, the Court finds that they are not protected by the Work Product Doctrine. The Court reserves ruling on whether they are privileged pending the *in camera* review.

The Court will place these rulings in a forthcoming decision once the *in camera* review is completed. At this point, the Court will simply reserve ruling on the motions and order counsel to provide the documents.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that counsel shall provide the allegedly privileged documents to the Court on or before March 9, 2011, for an *in camera* review. These documents will not contain any redactions. Any questions should be directed to the Court's Law Clerk Dave Metcalf (208-334-9025).

DATED: **March 1, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge