UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

----oo0oo----

| | |
|---|---|
| UNITED HERITAGE PROPERTY AND CASUALTY COMPANY, an Idaho corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, a foreign corporation,<br><br>    Defendant.<br>_____/ | NO. CIV. 1:10-456 WBS<br><br>MEMORANDUM AND ORDER RE: MOTIONS TO COMPEL AND TO QUASH |

----oo0oo----

Plaintiff United Heritage Property and Casualty Company ("United Heritage") brought this action against defendant Farmers Alliance Mutual Insurance Company ("FAMI"), arising out of FAMI's refusal to accept United Heritage's tender of an insurance-related suit. Presently before the court are two motions by third parties to quash subpoenas and FAMI's motion to compel production.

///

1

I. <u>Factual and Procedural Background</u>

On April 10, 2003, the minor daughter of Connie and Fabricio Zarate fell into a stairwell and suffered injuries at an apartment leased to the Zarates by the owners, the Beddes family and their partnership ("Beddes defendants"). (Compl. ¶¶ 8, 10 (Docket No. 1).) The Beddes defendants were insured by FAMI. (<u>Id.</u> ¶ 12.) At the time of the accident, the apartment was managed by Rentmaster under a Property Management Agreement with the Beddes defendants. (<u>Id.</u> ¶ 9.)

The Zarates filed a claim with FAMI for damages against the Beddes defendants, who settled the claim for $300,000.00. (<u>Id.</u> ¶¶ 11-12.) The Release and Settlement Agreement drafted by FAMI released FAMI and the Beddes defendants but expressly reserved all claims the Zarates may have had against Rentmaster:

> This release is not intended to release any other tortfeasor . . . and is specifically intended to exclude and does hereby exclude Rentmaster of Rexburg, any of its owners, or assigns as possible tortfeasor in this matter of Releasors. Such claims are specifically reserved and are not compromised or released by his [sic] document.

(<u>Id.</u> ¶ 13 (emphasis omitted).)

On April 4, 2006, Connie Zarate filed a lawsuit against Rentmaster for negligence ("Zarate litigation"). (<u>Id.</u> ¶ 15.) Rentmaster then filed a third-party complaint against the Beddes defendants. (<u>Id.</u> ¶ 16.)

Rentmaster, which had an insurance policy with United Heritage, tendered the defense and indemnity of the Zarate litigation to United Heritage, and United Heritage accepted. (<u>Id.</u> ¶¶ 20-21.) United Heritage alleges that it made numerous requests of FAMI for a copy of the Beddes defendants' insurance

2

policy. (Id. ¶¶ 17-19.) United Heritage eventually received a copy of the FAMI policy and discovered a provision stating that an "insured" includes "any organization while acting as your real estate manager." (Id. ¶ 22.)

This provision, United Heritage asserts, means that FAMI was the primary insurer not only for the Beddes defendants but also for Rentmaster. (Id. ¶ 19.) Accordingly, United Heritage and Rentmaster attempted to tender the defense of the Zarate litigation to FAMI and demanded a refund of attorney's fees and costs incurred and payment of any indemnity required to be paid by United Heritage in order to protect Rentmaster, but FAMI declined. (Id. ¶ 24.) The parties stated at the hearing on these motions that the Zarate litigation has settled for the policy limit of $500,000.00.

United Heritage then filed this lawsuit against FAMI, alleging claims for subrogation, breach of duty to defend, breach of duty to indemnify, bad faith, intentional infliction of emotional distress, fraud, unjust enrichment, and declaratory judgment.

II. Discussion

    A. Breck Barton's Motion to Quash

Breck Barton, attorney for the Zarates, moves to quash United Heritage's subpoena to produce documents relating to Barton's representation of the Zarates. (Docket No. 20.) Barton has already produced some of the documents, but moves to quash the subpoena as to those documents he believes are privileged. See Fed. R. Civ. P. 45(c)(3)(A). United Heritage does not oppose the motion. Accordingly, the court will grant Barton's motion to

quash.

   B. <u>Beddes Defendants' Motion to Quash</u>

Plaintiff's attorney, who so zealously opposes discovery of his own client's billing records on the ground that they are protected by the attorney-client and work product privileges, seeks with equal zeal to discover the entire file of the Beddes defendants' attorney, Jeffrey Thomson, in the Zarate litigation. The incongruity has not escaped the notice of the court. Presently before the court is the Beddes defendants motion to quash that subpoena.

It appears that some or all of the requested documents were the subject of a previous Order of the court, (<u>see</u> Mar. 23, 2011, Order (Docket No. 39)), but because those documents were reviewed <u>in camera</u> by another judge, the court cannot be certain. Nor can this court discern which documents may have been found discoverable and which were not. Mr. Thomson represented to the court that the documents were different and that the motion to quash is not moot. Counsel for the Beddes defendants did not appear at the hearing. Accordingly, the court must consider the motion on its merits.

The Beddes defendants have made no showing regarding the documents they believe to be privileged, such as by providing a privilege log. "A person withholding subpoenaed information under a claim that it is privileged . . . must . . . describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(d)(2)(A). Accordingly, the motion

4

will be denied without prejudice. The Beddes defendants may reassert the motion if, for example, they wish to specify the documents protected by privilege.

   C.   FAMI's Motion to Compel

FAMI moves to compel production of attorney invoices showing fees incurred by attorneys for United Heritage in the Zarate litigation. (Docket No. 40.) United Heritage seeks in its Complaint to recover those fees from FAMI. Redacted invoices previously produced by United Heritage do not reveal which attorney provided the service or what service was provided. (See Mot. to Compel Ex. C (Docket No. 40-2).) It is unclear how production of the redacted portions of those invoice could possibly prejudice plaintiff in any way. Nevertheless, plaintiff steadfastly takes the position that they are protected by the attorney-client and work product privileges.

Because this case arises under the court's diversity jurisdiction, attorney-client privilege is governed by Idaho law. See Fed. R. Evid. 501. When the state supreme court has not addressed an issue, the court "look[s] to other state-court decisions, well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law." Burns v. Int'l Ins. Co., 929 F.2d 1422, 1424 (9th Cir. 1991); see Truckstop.Net, L.L.C. v. Sprint Commc'ns Co., Nos. CV-04-561, CV-05-138, 2007 WL 2480001, at *5 (D. Idaho Aug. 29, 2007) ("The Court finds no Idaho precedent as to [subject matter waiver]. The Ninth Circuit has addressed this issue in two cases. The Court adopts Ninth Circuit precedent as Idaho law in making its determination as to the subject matter waiver

issue.").

Idaho courts have not addressed whether communications regarding fees are protected by the attorney-client privilege. Under Ninth Circuit law, communications between attorney and client that concern "the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege." Clarke v. Am. Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992). However, "correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege." Id.

United Heritage represents that the requested invoices fall within the privilege because they reveal the specific nature of the services provided. The court has reviewed the redacted documents, and notes that what is missing from the documents is that which is most essential to a bill: a short description of the work performed. Such a bill, without redactions, is precisely the type of document that attorneys expect to turn over, and routinely do turn over without objection, whenever they expect to recover attorney's fees. The court does not understand why United Heritage believes this case to be any different. However, the court need not decide whether the documents are in fact privileged under Clarke because, unlike the documents United Heritage's counsel seeks to subpoena from the Beddes defendants, the privileges have clearly been waived with respect to the

information sought here.

        Under Idaho law, a privilege is waived when the holder of the privilege "voluntarily discloses or consents to disclosure of any significant part of the matter or communication." Idaho R. Evid. 510. Waiver is based on the principle that "the attorney-client privilege is a defensive shield and not an offensive sword." Skelton v. Spencer, 98 Idaho 417, 420 (1977); see Bittaker v. Woodford, 331 F.3d 715, 719 (9th Cir. 2003). Under Idaho law, "as at common law, the 'consent' of the client to the disclosure of confidential communications may be either express or implied from the conduct of the client. When the 'consent' of the client is found, the privilege is said to have been 'waived.'" Skelton, 98 Idaho at 419 (citations omitted). Idaho courts have not squarely addressed whether putting information at issue in a case amounts to a waiver. But see id. at 421 ("By testifying to privileged communications, and by making an issue of her defense the privileged matter of her relation with her former attorneys, appellant Louise Spencer waived the attorney-client privilege for all communications relevant to the settlement process and the conduct of her former attorneys."). Accordingly, the court looks to other jurisdictions to determine whether United Heritage has waived the privilege.

        The Ninth Circuit has held that "parties in litigation may not abuse the [attorney-client] privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." Bittaker, 331 F.3d at 719. Thus, "[t]he party asserting the claim is said to have implicitly

7

waived the privilege." Id. Under both state and federal law, an implied waiver of the attorney-client privilege occurs when "(1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense." Home Indem. Co. v. Lane Powell Moss & Miller, 43 F.3d 1322, 1326 (9th Cir. 1995) (citing Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975)); see Terrebonne, Ltd. of Cal. v. Murray, 1 F. Supp. 2d 1050, 1059 (E.D. Cal. 1998) (Wanger, J.) ("Under California law, the attorney-client privilege is waived when the client . . . places 'in issue' the contents of the communication with its attorney.").

The Hearn factors are met here. United Heritage asserts the privilege after having filed suit against FAMI, which put the attorney's fees, in the form of damages, at issue. FAMI needs access to the billing records to be able to defend itself against double billing, inaccurate calculations, wrongly allocated hours, unreasonable rates, or any other inconsistencies. Accordingly, United Heritage has implicitly waived its attorney-client privilege relating to the records.

The work-product doctrine's protections are also waivable. United States v. Richey, 632 F.3d 559, 567 (9th Cir. 2011); see Truckstop.Net, 2007 WL 2480001, at *5 (the work-product doctrine is governed by federal law). The Bittaker rule "applies equally to the work product privilege, a complementary rule that protects many of the same interests [as the attorney-

8

client privilege]." Bittaker, 331 F.3d at 722 n.6.  Accordingly, the court will grant FAMI's motion to compel production.

IT IS THEREFORE ORDERED that:

(1) Breck Barton's motion to quash subpoena be, and the same hereby is, GRANTED;

(2) The Beddes defendants' motion to quash subpoena be, and the same hereby is, DENIED without prejudice; and

(3) FAMI's motion to compel be, and the same hereby is, GRANTED.

DATED: July 26, 2011

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE