UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

----oo0oo----

| | |
|---|---|
| UNITED HERITAGE PROPERTY AND CASUALTY COMPANY, an Idaho corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, a foreign corporation,<br><br>    Defendant.<br>_____/ | NO. CIV. 1:10-456 WBS<br><br>MEMORANDUM AND ORDER RE: MOTION TO AMEND COMPLAINT TO ADD A CLAIM FOR PUNITIVE DAMAGES |

----oo0oo----

Plaintiff United Heritage Property and Casualty Company ("United Heritage") brought this action against defendant Farmers Alliance Mutual Insurance Company ("FAMI"), arising out of FAMI's refusal to accept United Heritage's tender of an insurance-related suit. Presently before the court is United Heritage's motion to amend the Complaint to add a claim for punitive damages pursuant to Idaho Code section 6-1604(2). (Docket No. 75.)

///

I. <u>Factual and Procedural Background</u>

On April 10, 2003, the minor daughter of Connie and Fabricio Zarate fell into a stairwell and suffered injuries at an apartment leased to the Zarates by the owners, the Beddes family and their partnership ("Beddes defendants"). (Compl. ¶¶ 8, 10 (Docket No. 1).) The Beddes defendants were insured by FAMI (the "Beddes' policy"). (<u>Id.</u> ¶ 12.) At the time of the accident, the apartment was managed by Blair Dance, the Managing Member of Rentmaster, under a Property Management Agreement with the Beddes defendants. (<u>Id.</u> ¶ 9.)

Unbeknownst to Rentmaster, the Beddes' policy defines a covered insured as including, "[a]ny person (other than your 'employee'), or any organization while acting as your real estate manager," (Thomson Aff. Ex. A at 9), which would include Rentmaster. United Heritage claims that the evidence proves that FAMI knew from the outset that Rentmaster was insured under the Beddes' policy.

On December 4, 2003, FAMI received a General Liability Loss Notice from its agent that identified Blair Dance as the property manager for the property. (<u>Id.</u> Ex. B.) The demand letter from the Zarates' attorney also notified FAMI that: "We understand that you employed Blair Dance as manager and rental liason for the apartments that the Zarate's [sic] live in when the accident occurred." (<u>Id.</u> Ex. C.) Additionally, in the liability report to its re-insurer dated March 9, 2004, FAMI indicated that the insureds were: "David Leroy Beddes property owner Blain [sic] Dance property manager." (<u>Id.</u> Ex. G.) Defendant's casualty claim manager, Sandra Baldwin, stated during

2

her deposition testimony that it was her understanding, based on the liability report, that FAMI had identified Blair Dance, the Managing Member of Rentmaster, as an insured on the policy as early as March 9, 2004. (Id. Ex. BB at 111.)

United Heritage claims that two weeks after FAMI identified Rentmaster as an insured under the policy, FAMI had the opportunity to settle the Zarate claim for $125,000. (Id. Ex. H.) United Heritage alleges that Rentmaster was not given the opportunity to join the settlement discussions or to provide input. (Id. Ex. BB at 88-89.) United Heritage further claims that defendant's claim representative, Alice Lloyd, waited two weeks before requesting authority to settle the claim and only requested $75,000. (Id. Ex. D, FAMI 0317.) United Heritage argues that defendant therefore lost the opportunity to settle the Zarate matter for less than one-half of the $300,000 policy limit. (Mot. to Amend at 8.)

On January 7, 2005, defendant's claim representative sent the claim file to attorney John Bailey "to assess damages and negligence." (Thomson Aff. Ex. D, FAMI 0319.) Bailey later became the retained counsel for the Beddeses and communicated a $300,000 settlement offer to the Zarates' counsel on July 8, 2005. (Id. Ex. I.) Bailey did not include Rentmaster as a releasee in his initial draft of the settlement papers, however Lloyd insisted that Rentmaster be included as a releasee. (Id. Ex. D, FAMI 0321.) The Zarates' counsel refused to settle if Rentmaster was included as a releasee and FAMI allowed Rentmaster to be removed from the agreement. (Id. Exs. J, K.) FAMI agreed to add language expressly preserving any and all of Zarates'

3

claims against Rentmaster:

> This release is not intended to release any other tortfeasor . . . and is specifically intended to exclude and does hereby exclude Rentmaster of Rexburg, any of its owners, or assigns as possible tortfeasor in this matter of Releasors. Such claims are specifically reserved and are not compromised or released by his [sic] document.

(Id. Ex. K.)

Following FAMI's settlement of the Zarate claims, FAMI provided an update on the case to its re-insurer stating that:

> Sorry this is so late in response. The insured is the owner of the property. We went ahead and settled the insured out of the claim to protect his interests. The other party is the property manager actually all I believe they do is collect rent. Their company called me and advised me they are not going to settle this case they will force litigation. They did not mention a tender of defense or indemnification. Anyway. With the insured out of the case the rent collector has an empty chair if they are forced into litigation. The plaintiff really has blown their case by settling with us and not everyone together.
>
> I don't know if we will be called upon to defend but we I [sic] tried to include them in the settlement. We couldn't let the insured be exposed to litigation if we could avoid it.

(Id. Ex. N.)

United Heritage also alleges that FAMI actively concealed the terms of the Beddes' policy to prevent Rentmaster from learning that it was an insured under the policy. (Mot. to Amend at 12.) The Zarates' counsel requested a copy of the policy in February 2004, (Thomson Aff. Ex. E), but was only provided with the portion of the policy addressing medical payment coverage, (id. Ex. F). After the Zarates sued Rentmaster and Rentmaster filed a third-party complaint against the Beddes defendants, Rentmaster's counsel subpoenaed Mr. Beddes and demanded that he bring a copy of the Beddes' policy to his

4

deposition. (Id. Ex. P.) Neither Mr. Beddes nor his counsel, Bailey, produced a copy of the Beddes' policy. (Id. Ex. Q.) On April 15, 2008, the Beddeses, through Bailey, served answers and responses to Rentmaster's written discovery in the underlying litigation. (Id. Ex. R.) On June 2, 2008, Rentmaster's counsel sent Bailey a meet-and-confer letter requesting supplementation of the requested insurance information. (Id. Ex. S.) Rentmaster finally received a copy of the Beddes' policy when a mediator received a copy in May 2010. (Mot. to Amend at 13.)

Rentmaster, which had an insurance policy with United Heritage, had previously tendered the defense and indemnity of the Zarate litigation to United Heritage, and United Heritage accepted. (Compl. ¶¶ 20-21.) After reviewing the Beddes' policy and discovering Rentmaster's status as an insured, both Rentmaster and United Heritage tendered the duty to defend and indemnify the Zarate claim to FAMI. (Thomson Aff. Exs. V, W.) United Heritage claims that FAMI never accepted the tenders in writing. (Mot. to Amend at 14.) United Heritage further claims that FAMI refused to retain Rentmaster's long-time counsel, and instead offered the services of Bailey, who was currently representing the Beddeses. (Thomson Aff. Ex. X.) Instead of accepting Bailey's services, Rentmaster continued to incur costs and fees with its own counsel because it feared that Bailey's representation of the Beddeses was a conflict of interest. (Mot. to Amend at 14.)

Several months after United Heritage and Rentmaster tendered to FAMI, FAMI retained Donald Carey on behalf of Rentmaster to monitor the minor's compromise proceeding in the

5

Zarate action. (Thomson Aff. Ex. Z.) United Heritage alleges that Carey's role was to protect FAMI's or the Beddeses' interests in the proceeding, and not those of Rentmaster. (Mot. to Amend at 14-15.) Rentmaster and United Heritage eventually settled with the Zarates for $500,000. Upon receipt of Rentmaster's unredacted legal bills, FAMI did not reimburse any of Rentmaster's defense costs for over four months, nor did it reimburse any expenses incurred prior to April 2007. (Reply to Mot. to Amend at 24-25.)

Rentmaster assigned all of its claims against FAMI to United Heritage, which filed this lawsuit against FAMI alleging claims for subrogation, breach of duty to defend, breach of duty to indemnify, bad faith, intentional infliction of emotional distress, fraud, unjust enrichment, and declaratory judgment.

## II. Discussion

### A. Standard of Review

"Punitive damages are not favored in the law and should be awarded in only the most unusual and compelling circumstances." Seiniger Law Office, P.A. v. N. Pac. Ins. Co., 145 Idaho 241, 249 (2008). The decision to allow a plaintiff to amend a complaint to allege punitive damages rests in the sound discretion of the trial court. See Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP, 148 Idaho 479, 499 (2009); see also Garnett v. Transamerica Ins. Servs., 118 Idaho 769, 781 (1990) (holding that the abuse-of-discretion standard "is essentially a substantial evidence standard").

Punitive damages are governed by Idaho Code section 6-1604(2), which states in part,

> In all civil actions in which punitive damages are permitted, no claim for damages shall be filed containing a prayer for relief seeking punitive damages. However, a party may, pursuant to a pretrial motion and after hearing before the court, amend the pleadings to include a prayer for relief seeking punitive damages. The court shall allow the motion to amend the pleadings if, after weighing the evidence presented, the court concludes that, the moving party has established at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages.

Idaho Code Ann. § 6-1604(2). A party seeking punitive damages at trial "must prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." Id. § 6-1604(1). A plaintiff must therefore "establish a reasonable likelihood she could prove by [clear and convincing evidence][1] that [the defendant] acted oppressively, fraudulently, wantonly, maliciously or outrageously." Vendelin v. Costco Wholesale Corp., 140 Idaho 416, 423 (2004).

In Cheney v. Palos Verdes Investment Corp., 104 Idaho 897 (1983), the Idaho Supreme Court described the circumstances necessary to justify punitive damages:

> An award of punitive damages will be sustained on appeal only when it is shown that the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was preformed by the defendant with an understanding of or disregard for its likely consequences." The justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that be termed "malice, oppression, fraud or gross negligence"; "malice, oppression, wantonness"; or simply "deliberate or willful."

---

[1] The applicable burden of proof that plaintiffs must show for punitive damages under Idaho Code section 6-1604(1) was amended in 2003. The amendment replaced the "preponderance of the evidence" standard with the "clear and convincing evidence" standard. Vendelin, 140 Idaho at 423 n.1.

7

Cheney, 104 Idaho at 905 (quoting Hatfield v. Max Rouse & Sons Nw., 100 Idaho 840, 851 (1980) (abrogated on other grounds recognized by Brown v. Matthews Mortuary, Inc., 118 Idaho 830, 834 n.3 (1990))). Punitive damages may not be awarded based on simple negligence, Inland Grp. of Companies, Inc. v. Providence Wash. Ins. Co., 133 Idaho 249, 259 (1999), but instead depend on "whether the plaintiff is able to establish the requisite intersection of two factors: a bad act and a bad state of mind." Hall v. Farmers Alliance Mut. Ins. Co., 145 Idaho 313, 319 (2008).

B. Assignment of Punitive Damages Claim

In cases involving the assignment of causes of action, Idaho generally follows a policy of free transferability. See Purco Fleet Servs., Inc. v. Idaho State Dept. of Finance, 140 Idaho 121, 126 (2004). "When an insured assigns rights to recover under an insurance policy, the assignee is in the same position as the insured and takes only those rights and remedies the insured had." Hartman v. United Heritage Prop. & Cas. Co., 141 Idaho 193, 198 (2005). Defendant argues that Rentmaster's claim for punitive damages cannot be assigned to United Heritage. The Idaho courts have not squarely addressed the issue of the assignability of punitive damages. The absence of Idaho precedent leads this court to consider the assignability of punitive damages in other states and the underlying purpose of punitive damages in Idaho.

Defendant relies on the California Supreme Court decision in Murphy v. Allstate Insurance Co., 17 Cal. 3d 937 (1976), for the proposition that punitive damages are not

assignable in California. (Opp'n to Mot. to Amend at 6.) Defendant has taken the California Supreme Court's holding out of context. The court first determined that the damages stemming from the plaintiff's claim that the insurer violated its duty to settle arose from the personal tort aspect of the bad faith cause of action. Murphy, 17 Cal. 3d at 942. The court then noted that, because the bad faith cause of action was a personal tort, the underlying cause of action was not assignable. Id. The court concluded that damages for emotional distress or punitive damages based on the claim were not assignable because the cause of action was not assignable. Id. The court's decision does not stand for the general principle that punitive damages may not be assigned under any circumstance.

This court is aware of several cases applying California law that have cited Murphy for the proposition that punitive damages are not assignable; however those cases are not persuasive because they have largely done so in dicta or without analyzing the context of the Murphy decision. See, e.g., GATX/Airlog Co. v. Evergreen Int'l Airlines Inc., 52 Fed. Appx. 940, 941-42 (9th Cir. 2002) (stating that punitive damages are not assignable with no further analysis); Drazan v. Atl. Mut. Ins. Co., No. C 10-01371, 2010 WL 2629576, at *4 (N.D. Cal. June 29, 2010) (same); Essex Ins. Co. v. Fire Star Dye House, Inc., 38 Cal. 4th 1252, 1263 (2006) (dicta because punitive damages were not requested); Smith v. State Farm Mut. Auto. Ins. Co., 5 Cal. App. 4th 1104, 1111 (1st Dist. 1992) (dicta with no additional discussion of punitive damages).

On the other hand, in Nelson v. Exxon Mobile Corp., 102

Cal. Rptr. 3d 311 (3d Dist. 2009), the appeals court distinguished Murphy and held that punitive damages were assignable for the claim of bad faith breach of insurance policy. Id. at 318-22. The Nelson court explained that "it is not the nature of the relief that prohibits a claim for emotional distress or punitive damages from being assigned. It is the nature of the underlying cause of action giving rise to that relief." Id. at 319. This finding is consistent with California's treatment of punitive damages as being merely a remedy that may attach to a particular cause of action, not a separate cause of action. See Hilliard v. A.H. Robins Co., 148 Cal. App. 3d 374, 391 (2d Dist. 1983). "As long as the causes of action themselves are assignable . . . any punitive damages claims associated with those causes of action are also assignable." Nelson, 102 Cal. Rptr. 3d at 322. Regardless of the assignability of punitive damages in California, this court is not bound by California law, which defendant conceded in oral arguments is the only state to have suggested that punitive damages are not assignable.

Authority from outside of California strongly supports the assignability of punitive damages. In Clearwater v. State Farm Mutual Automobile Insurance Co., 161 Ariz. 590 (App. Ct. 1989), the Arizona Court of Appeals rejected Murphy and upheld the assignment of punitive damages arising from a bad faith breach of an insurance contract. Id. at 594-95. The court recognized that personal tort claims may not be assigned to a third party, but found nothing in law or public policy that would prohibit the assignment of punitive damages relating to a bad

faith breach of an insurance contract.  Id.  The court further emphasized that an insurer should not be able to escape liability through assignment where the principle purpose of punitive damages is deterrence.  Id.

Other states to have addressed this question have similarly held that claims for punitive damages can be assigned when they are based on otherwise assignable causes of action. See, e.g., Cuson v. Md. Cas. Co., 735 F. Supp. 966, 970-71 (D. Haw. 1990) (holding that punitive damages based on breach of contract claim was assignable); Oppel v. Empire Mut. Ins., 517 F. Supp. 1305, 1307 (S.D.N.Y. 1981) (finding that "there is no reason why this cause of action [for punitive damages in a bad faith case] also cannot be assigned"); F.D.I.C. v. W.R. Grace & Co., 691 F. Supp. 87, 92 (N.D. Ill. 1988) (finding punitive damages assignable because "punitive damages are a type of relief which is part and parcel of the underlying cause of action and do not constitute an independent basis for recovery"), rev'd on other grounds by 877 F.2d 614 (7th Cir. 1989); Kaplan v. Harco Nat'l Ins. Co., 716 So.2d 673, 666 (Miss. App. Ct. 1998) (approving of assignment of punitive damages for breach of duties owed by insurance company); Allstate Ins. Co. v. Axsom, 696 N.E.2d 482, 487 (Ind. App. Ct. 1998) ("If the excess judgment and resulting injury to Link's property is the consequence of oppressive, i.e. tortious conduct by Allstate, then punitive damages, the remedy for such conduct, should also be assignable.").

The public policy motivation behind the use of punitive damages in Idaho is consistent with the assignability of punitive

11

damages because it is not personal or victim-specific. "'Punitive damages' means damages awarded to a claimant, over and above what will compensate for actual personal injury and property damage, to serve the public policies of punishing defendant for outrageous conduct and of deterring future like conduct."[2] Idaho Code Ann. § 6-1601(9). The purpose of punitive damages "is not to compensate the plaintiff, but to express the outrage of society at certain actions of the defendant." Linscott v. Rainier Nat'l Life Ins. Co., 100 Idaho 854, 857 (1980). The amount awarded as punitive damages "should be prompted by the court's or jury's desire to assure, to the extent possible via the imposition of a monetary penalty, that similar conduct does not occur in the future." Id.

In Hall v. Farmers Alliance Mutual Insurance Co., the Idaho Supreme Court recognized that "Idaho has a legitimate interest in preventing the exploitation of its citizens by punishing insurance companies that exploit the vulnerability of their insureds." Hall, 145 Idaho at 322. "[I]f an insurance company could delay payment of a claim without repercussions extending beyond the amount it owed in the first place, an *incentive* to delay would exist." Id. at 322-23 (emphasis in original). "An occasional award of compensatory damages against such parties would have little deterrent effect. A judgment simply for compensatory damages would require the offender to do no more than return the money which he had taken from the

---

[2] Any suggestion that the purpose of punitive damages is not to punish the defendant is a mischaracterization of Idaho law. Schaefer v. Ready, 134 Idaho 378, 382 (Ct. App. 2000).

12

plaintiff." Cheney, 104 Idaho at 905 (quoting Boise Dodge, Inc. v. Clark, 92 Idaho 902, 909 (1969)). Prohibiting the assignment of punitive damages would thus result in an unjustified windfall for defendants.

The Idaho Supreme Court has recognized the difference between emotional damages, which may not be assigned, and punitive damages, which may be assigned. "The emotional distress damages are awardable for a condition particular to the aggrieved party. Punitive damages are awardable primarily to deter future bad conduct. There need be no overlap between the two." Walston v. Monumental Life Ins. Co., 129 Idaho 211, 220 (1996). This distinction further suggests that punitive damages are not necessarily personal to the plaintiff and therefore may be assigned along with the assignable underlying cause of action.

C. Substantial Evidence Supporting Punitive Damages

The totality of the evidence presented by United Heritage in its motion to amend would support a jury verdict for punitive damages. Specifically, United Heritage presents evidence that: Rentmaster was clearly identified in the Beddes' policy as an insured; FAMI knew that Rentmaster was a covered insured at the commencement of the claims litigation; FAMI prevented Rentmaster from learning that it was an insured by withholding the Beddes' policy throughout the litigation; FAMI settled the Beddes' claims at the expense of settling claims against Rentmaster; and FAMI did not adequately respond to plaintiff's tender of defense. In addition to the evidence presented, United Heritage's expert, Irving "Buddy" Paul, has opined that FAMI's conduct was an extreme violation of insurance

13

industry standards in Idaho for numerous reasons. (Paul Aff. ¶ 9.) This testimony is similar to evidence that the Idaho Supreme Court has previously held sufficient to meet the substantial evidence standard. See Gannett v. Transamerica Ins. Serv., 118 Idaho 769, 781 (1990) (noting the testimony of plaintiff's expert insurance witness that defendant's claims handling was "an extreme deviation of the standard of care in claims handling in this part of the country at this time"); Sliman v. Aluminum Co. of Am., 112 Idaho 277, 285 (1986) (expert described defendant's conduct as "an extreme deviation from the customary practice in the industry"). United Heritage thus provides substantial evidence supporting its claim that defendant's behavior was malicious, deliberate, willfull, fraudulent, or grossly negligent.

FAMI's opposition to this motion to amend puts forth an alternate interpretation of the evidence that United Heritage relies upon to prove punitive damages. This interpretation suggests that there are material facts in dispute that need to be resolved by the jury, but does not sufficiently establish that United Heritage lacks a reasonable likelihood of convincing the jury of its interpretation of the facts. Even if the court were to accept FAMI's position that its initial failure to identify Rentmaster as an insured was unintentional, United Heritage has presented evidence supporting punitive damages based on FAMI's conduct after Rentmaster tendered. In particular, United Heritage has presented evidence that: FAMI did not adequately respond to United Heritage's and Rentmaster's tender; FAMI provided counsel with a conflict of interest; FAMI's appointed

counsel did not represent Rentmaster's interests; and that FAMI did not timely or adequately reimburse Rentmaster for its expenses stemming from the Zarate litigation.  These facts constitute substantial evidence supporting plaintiff's claim for punitive damages.

IT IS THEREFORE ORDERED that United Heritage's motion to amend the Complaint to include a claim for punitive damages be, and the same hereby is, GRANTED.

DATED:   February 9, 2012

*[Signature: William B. Shubb]*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE